## DYER LOOMIS *versus* EZRA F. NEWHALL, Administrator.

An entire promise founded partly on a past and executed consideration and partly on an executory consideration, is supported by the executory consideration.

An entire promise in writing, being in part a collateral promise to pay the debt of another, and in part an original undertaking, is a legal and binding promise.

But such a promise not in writing, being, by force of the statute of frauds, void as to the collateral undertaking, is void in the whole.

Thus where the plaintiff had furnished supplies to the defendant's son, for which the son was liable, and the defendant, at the request of the plaintiff, continued to furnish supplies, the plaintiff saying, "For what you have done and for what you shall do for my son, I will see you paid," it was held that the promise was founded on a legal consideration, but that not being in writing, it was void by the statute of frauds.

But if the past supplies were furnished gratuitously, such a verbal promise would be valid, for it would not be for the debt of another, and consequently not within the statute of frauds

The liability of a father, under *St.* 1793, *c* 59, § 3, to support his son, who is unable to support himself, does not accrue until proceedings have been had pursuant to the statute ; consequently the furnishing supplies to the son before such proceedings have been had, is not a benefit to the father, so as to constitute a legal consideration for his promise made after the supplies were furnished, to pay for them.

ASSUMPSIT against the administrator of the estate of Benoice Johnson, to recover the sum of $134·33 for boarding Benoice Johnson junior, a son of the intestate, from March 27, 1827, to July 28, 1828. The counts were upon an account annexed to the writ and the common money counts. Trial before *Putnam* J.

Marshall Loomis, a son of the plaintiff, deposed, in support of the action, that Benoice Johnson junior boarded at the

plaintiff's house in Cornville, Maine, from the last Friday of March 1827, with occasional absences, till July 28, 1828 ; that he was married on that day, when he left the plaintiff's and went to live at the house of his wife's father ; that when he came to the plaintiff's, he had no money, and no clothes except those which he then wore ; that he was intemperate, reckless, and improvident, and incompetent to take care of himself or of property ; that he was in the habit of saying that he would not work, and that his father should maintain him ; that the deponent was present at a conversation between the intestate and the plaintiff, at the plaintiff's house, on July 27, 1828, when the intestate first addressed his son and told him to stay at the plaintiff's and make it his home, and then, turning to the plaintiff, the intestate said, "For what you have already done and what you shall do for my son, I will see you paid hereafter for your services, expense, and trouble ;" that the next morning the intestate told the deponent, as agent to the plaintiff, to pay the money taxes of his son and he would pay the plaintiff ; that the deponent accordingly paid a money tax, amounting to $1·60, as charged in the plaintiff's demand ; and that the plaintiff was the brother-in-law of the intestate, having married his sister.

The plaintiff produced a letter from the intestate, dated August 25, 1828, in which he says in regard to his son, "Do what you think proper for him that is necessary, and no more, for which you will not suffer."

It was testified that Benoice Johnson junior was about forty years of age ; that he failed in business during the last war ; that he was for a long time absent from Marblehead, the place of the intestate's residence, and that he returned to Marblehead in 1826 or 1827 ; that he was then in a very ragged condition ; that he went first to the house of one Appleton, where he stayed about a week and was clothed by Appleton, and then went to the intestate's house, and stayed there from three to six months, and the intestate furnished him with some new clothes ; that he performed no services for the intestate ; that previously to 1827, he had been engaged in privateering ; that his habits were very bad ; and that the intestate was in easy circumstances.

The counsel for the defendant contended, that Benoice Johnson junior was emancipated ; that the consideration for the alleged promise of the intestate was past and executed, and according to the case of *Mills* v. *Wyman*, 3 Pick. 207, the intestate was not liable ; at any rate, that he was not liable for more than one day's boarding, which took place after the promise ; and that the evidence of the declarations of the son, as set forth in the deposition of M. Loomis, was hearsay and should be struck out.

The counsel for the plaintiff contended, that there was a beneficial consideration for the promise ; that the intestate received his son after his return to Marblehead, as one of his family, and instead of supplying his wants at home, procured the supplies at the house of the plaintiff.

A nonsuit was entered by consent, subject to the opinion of the whole Court.

*Choate*, for the plaintiff. This case is distinguishable from that of *Mills* v. *Wyman*. There the son was emancipated, and no communication was had with the father until all the supplies had been furnished. Here a benefit was conferred on the intestate, the son being a part of his family. The ratification was equivalent to a previous request. The jury would have been warranted in finding that the intestate intended to support his son, and that there was a previous request. The liability imposed on the intestate by *St.* 1793, *c.* 59, § 3, may have been an inducement with him to make the promise to the plaintiff. 1 Wms's Saund. 264, note 1 ; Metcalf's Yelv. 41 *a*, note.

A small part of the consideration was not past, and there was, therefore, a sufficient consideration for the whole promise. 1 Com. Contr. 23 ; Com. Dig. *Action upon the Case upon Assumpsit*, B 4, *B* 12 ; Chit. Contr. 7 ; *Sturlyn* v. *Albany*, Cro. Eliz. 67 ; *Williamson* v. *Clements*, 1 Taunt. 523 ; *Phillipps* v. *Bateman*, 16 East, 372 ; *Jones* v. *Ashburnham*, 4 East, 455 ; 1 Saund. Pl. and Evid. 147.

*Saltonstall* and *Lord*, for the defendant. The intestate's promise was for the debt of another, and not being in writing, was void by the statute of frauds. *Buckmyr* v. *Darnall*, 2 Ld. Raym. 1085 ; *Matson* v. *Wharam*, 2 T. R. 80 ; *Wat-*

14 *

*kins* v. *Perkins*, 1 Ld. Raym. 224 ; *Gent* v. *Tompkins*, 1 Dowl. & Ryl. 541.

The promise was founded on a past and executed consideration, without any previous request or any legal obligation on the part of the intestate. *Mills* v. *Wyman*, 3 Pick. 207 , *Jones* v. *Ashburnham*, 4 East, 455 ; *Tooley* v. *Windham*, Cro. Eliz. 206 ; 2 Stark. Ev. 93 ; Metcalf's Yelv. 41 *a*, note 1.

*Choate*, in reply, said as to the statute of frauds, that the son was never liable ; that no credit was given to him ; and further, that the nonsuit could not be sustained on the ground that the promise was within the statute, as this point had not been made previously to the nonsuit.

PUTNAM J. delivered the opinion of the Court. We all think that the evidence in the case proves clearly, that the son of the intestate was emancipated, and not one of the family of the intestate, when the plaintiff provided board and lodging, and paid money for the son, as stated in the plain-tiff's account.

It appears that he went to the house of the plaintiff, (who was his uncle-in-law,) and resided there somewhat more than a year, viz. from the last Friday in March 1827, until the 28th of July, 1828, when he went away ; and that the intestate came there and told his son "to stay at the plaintiff's house and make it his home," and, turning to the plaintiff, he said to him, " For what you have done, and for what you shall do, for my son, I will see you paid hereafter for your services, expense, and trouble." The son remained at the plaintiff's house one day only, after that conversation.

The promise in regard to the future supplies was an original and not a collateral undertaking.

We proceed to consider the residue of the claim, which is indeed the principal and substantial part of it.

It appears that the son had been for many years a vagabond. After he returned to Marblehead from his wanderings, he was assisted a little by his father, but not more or otherwise than the ordinary claims of charity would seem to require. Little if any aid was afforded by the father, beyond what was given by strangers. He was not sent by the father to the

plaintiff to be boarded, and he never returned to his father's house after he left the house of the plaintiff. He was received and entertained by the plaintiff without any application or request from the father. We cannot doubt but that the son was liable to the plaintiff personally, unless the support which he afforded, was rendered gratuitously and as a mere char'ty. If there were any original legal liability, it was wholly on the part of the son. The declarations which the son made, tending to show that his father was to support him, are clearly not competent evidence, and must be rejected. He might have been a witness in the case. The letter of the father, of August 25, 1828, after the conversation before stated, and after the father had returned home, makes no allusion to any compensation to be made by him for any thing which had passed before that conversation. It was all prospective. "Do what you think proper for him that is necessary and no more, for which you will not suffer." The son was forty years old, and (as we have before said) was, from the evidence in the case, to be considered as completely emancipated, and constituting no part of the family of the father, when the supplies were made by the plaintiff.

There is no evidence in the case from which a jury would be warranted in finding that the plaintiff made the supplies to the son, at the father's request ; and unless such request were proved and the credit were given to the father originally, he would not be legally liable to pay for them. The promise to pay for them would be clearly to pay for the debt of another.

It was contended, that the supplies furnished by the plaintiff were for the benefit of the father, inasmuch as he would have been liable to support the son if he were or should become a pauper. The same suggestion was made in *Mills* v. *Wyman*, 3 Pick. 207. But before such a liability could be enforced the requisitions of the statute must be complied with and pursued. It is sufficient to say, that the son was not then in a legal sense a pauper ; and we cannot assume that the facts necessary to charge the father existed, without a legal adjudication under the statute touching that subject.

If the case stopped here, we think that this part of it could not be distinguished from *Mills* v. *Wyman*, 3 Pick. 20~

The promise of the father in that case to pay for the ex
penses incurred by Mills for the defendant's son, was in
writing, but the case turned wholly on the failure of a legal
consideration for the promise. There was no evidence that
the father in that case, or in this, ever made any request to
the plaintiff to make these advances or supplies. And the
promise was made after the supplies had been furnished, and
related wholly to those supplies.

But the promise which the intestate made, embraced the
supplies which had been made, and those which should be
made by the plaintiff. These considerations were united and
coupled together. The wife of the plaintiff was the sister of
the intestate. He was desirous that this profligate son might
find shelter and food, clothing and a home, at the plaintiff's
house. He therefore promised to pay for the past as well as
for the future supplies. The son boarded there only one day
after, and then married a wife, and went to live with her
father. So the plaintiff only had the trouble and charge of
boarding him for that day, and also for the small sum paid for
the taxes of the son. And the question is, if this new con-
sideration for future supplies is so incorporated into the un-
dertaking to pay for the past, as to support the promise made
for the payment of both. It is certain that the plaintiff sus-
tained some damage, and was at some charge in consequence
of his undertaking. It may have been that he would not have
suffered the son to remain another day under his roof, unless
the plaintiff had promised to pay for both the old and new
supplies. Now it is not necessary that the consideration
should be adequate to the amount promised to be paid. If
the plaintiff sustains a slight damage or inconvenience, the law
will not interfere and exonerate the party as if there had been
no consideration at all. And, although the father was not
bound to pay for the supplies made without his request, yet
if he had seen fit to have paid for them voluntarily, he could
not have recovered the money back. He might adopt the
voluntary courtesy, and a ratification by payment could not
afterwards be avoided. A man may judge for himself, what
sum he will give or promise to pay for a thing which he may

want, and it is not for him to avoid the agreement, if it is legally proved and was made without fraud.

And we are satisfied that there was no *continuing* consideration, as was suggested by the plaintiff's counsel, for there never existed any original legal duty or liability upon the intestate to pay for these supplies. It would be a solecism to speak of a thing as continuing, which never had any existence. A continuing consideration is always understood to involve a prior duty, debt or liability; and Mr. *Dane* (1 Dane's Abr. 120) well observes, that the continuance of the debt raises the new promise.

But the intestate might make such offers of compensation for the board for his son thereafter, as he might think to be reasonable under the circumstances.

He might well therefore add a cause or consideration that was strictly past, to the new promise.

This course of reasoning is we think supported by *Bret* v. *J. S. et ux.*, Cro. Eliz. 756. It was thus. The first husband of the feme defendant sent his son to table with the plaintiff for three years, and agreed to pay £8 a year, and died within the year. The feme, during her widowhood, in consideration of her natural affection for the son, and that he should continue to reside with the plaintiff, promised to pay £6·13·4 for the tabling of the son for the year past, and £8 a year afterwards, and married J. S. the other defendant. And the action was for the tabling for the whole time. And although the court held that natural affection was not a sufficient consideration for an assumpsit; yet as it was not only for that cause, but that her son should also continue at the plaintiff's table, they held the promise to be good, as well for the money due before, as for that which should afterwards become due. The case of *Cotton* v. *Westcott*, 1 Rolle's Rep. 381, is to the same point. Now it is true that in the case in Cro. El'z. the son remained at the plaintiff's house for the whole of the three years, and in the case at bar, that he left the plaintiff's house in one day after the father's promise. But it was not for the fault of the plaintiff, that the son left; he went away voluntarily. The proposal of the father to pay for past and future, was ratified and accepted by the permission

Loomis
*v.*
Newhall.

of the plaintiff to have the son board at his house. The en-
tire contract between the father and the plaintiff was then so
far executed. It must be adjudged to be good, as well as to
what the plaintiff had done for the son before, as for what he
had done after it was made, if it were proved by competent
evidence. And the amount of what was done afterwards,
as something was done in virtue of the contract, does not af-
fect the principle, but only goes to the damages. There
was then we all think a legal consideration for this promise.
In this respect this case differs from *Mills* v. *Wyman* before
cited, for there there was no legal consideration for the prom-
ise. If there had been, as it was in writing, the plaintiff would
have recovered notwithstanding it was for the debt of another.

But the promise which the defendant's intestate made was
by word of mouth, and not by writing, and the statute of
frauds applies, unless it can be considered as an undertaking
upon a *new consideration*, and not merely an undertaking to
pay for the debt of a third person. It is perfectly clear, that
the son was originally liable for all the supplies which were
made before this promise of the father. If however the
promise were made upon some new consideration sufficient
in law to support it, the case would be taken out of the statute
of frauds ; 1 Wms's. Saund. 211 *a*, note. We have examined
the cases relied upon by Serjeant Williams to support this
exception. They are first, *Read* v. *Nash*, 1 Wils. 305. In
that case the plaintiff's testator brought an action of assault
and battery against one Johnson, and the defendant, being
present, promised the testator, if he would not proceed to
trial, he would pay him £50 and costs ; whereupon the tes-
tator withdrew his record. And it was held that this prom-
ise was not within the statute ; but the determination went
upon the ground, that it did not appear that there had been
any default or miscarriage on the part of Johnson ; for if he
had proceeded to trial, he might have obtained a verdict in
his favor. The withdrawing of the record at the defendant's
request was a sufficient consideration, and the plaintiff re-
covered as upon an original undertaking of the defendant.
The next case cited was *Stephens* v. *Squire*, 5 Mod. 205
There a suit had been brought against the defendant and two

others, for appearing for the plaintiff without a warrant of attorney, and the defendant promised the plaintiff, if he would not prosecute the action, to pay £10 and costs ; and that was held not within the statute ; and obviously it was not, for the defendant would have been liable for the whole, if judgment had been recovered against the three original defendants.

The next was *Williams* v. *Leper*, 3 Burr. 1886. The defendant had possession as trustee, of the goods of a tenant who was insolvent, and was about to sell the same for the benefit of creditors, and the landlord came to the house to distrain for rent, and the defendant promised to pay the rent if the landlord would forbear to distrain. The landlord was the plaintiff. He had a lien upon the goods. The defendant was trustee for all the creditors, and was obliged to pay the rent to liberate the goods from the lien of the landlord which existed before the assignment. And the court held the case not to be within the statute of frauds. The defendant was very properly considered as the bailiff of the landlord. The goods were considered as the debtor. That promise was held not to be a collateral, but a direct undertaking upon a new consideration, to relieve the goods from the lien of the landlord. These were not mere naked promises to pay a debt &c. of another with the promisor's own funds ; which are the cases to which the statute applies.

Now the case at bar does not come within the reason of the cases cited, to take the promise of the intestate out of the statute. The debt (as has been said) was due from the son, and it remained still due, notwithstanding the promise of the intestate to pay it himself. The cases cited were clearly never within the statute, for the reasons above stated, and the case at bar was clearly within it, and it seems to us never to have been taken out of it, unless it were so exempted by mingling the promise to pay the debt of the son, with the direct undertaking of the intestate to pay for the supplies that should thereafter be made.

But we consider it to be settled, that where there is an entire promise, including something void by a statute, the plaintiff cannot separate it, and reject or waive the part of the promise which is within, and recover for that which is with-

Loomis
v.
Newhall.

out the statute. *Chater* v. *Becket*, 7 T. R. 200. In this case the defendant undertook to pay ten shillings in a pound for the debt of one Harris, who was insolvent, and also certain expenses which the plaintiff had sustained in procuring meetings of creditors, &c., if the plaintiff would not prosecute the commission of bankruptcy ; to which he agreed. The suit was for the expenses. But the court held, that, as the promise was entire, and one part of it, viz. the engaging to pay ten shillings in a pound for the debt of Harris, being void by the statute of frauds, the plaintiff could not recover for the other part of it ; that it was an indivisible contract, and the plaintiff could not recover on any part, as the statute made some part void. The case of *Featherston* v. *Hutchinson*, Cro. Eliz. 199, is to the same point. The plaintiff had arrested the body of one H. on execution, at the suit of J. S. The defendant, in consideration that he would permit him to go at large and of two shillings, which the plaintiff paid to the defendant, promised to pay the plaintiff the money which J. S. was adjudged to pay. The promise was void, by *St.* 23 *Hen.* 6, *c.* 10, being for ease and favor, &c., as to the first consideration, and although that was joined with a good consideration, viz. the two shillings, yet the promise being void by statute for part, it was void in all.

The case of Lord *Lexington* v. *Clarke et ux.*, 2 Vent. 223, is clear to this point. In that case the plaintiff had demised lands to the former husband of the wife, defendant, and in consideration that the plaintiff would permit her to have the premises until Lady-day then next and permit her to remove certain fixtures, she promised the plaintiff to pay £160 for the rent arrear, and £260 more. She paid the £160, which was within the statute, and the plaintiff sued her for the £260, which was for her own occupation &c. But the whole court decided, that the promise, being void in one part, could not stand good for the other ; for (said they) " it is an entire agreement and the action is brought for both the sums, and indeed could not be otherwise without variance from the promise."

If therefore the defendant had paid for the supplies made before his promise, for which the son was liable, he could

Loomis
*v.*
Newhall.

not recover for those made subsequently, inasmuch as there was an entire and express promise upon which the plaintiff must declare ; which being void in one part, could not be separated and be made available for the other. And the plaintiff cannot resort to an implied contract, where he proves an express and special agreement.

It is true that at the trial there was no exception made against the plaintiff's claim, that it was within the statute of frauds, and his counsel have contended that it is now too late to make that objection. The cause was tried before me, and when it was first opened I thought that it came within the case of *Mills* v. *Wyman*, and recommended a nonsuit, which took place accordingly. The proceeding was rather *pro formâ*, than otherwise, with a view to settle the law of the case. It was not much examined at the sittings. And all my brethren are of opinion, that under the circumstances the defendant should be let in to any matter of defence which might have been offered if the trial had proceeded.

In conclusion, we are all of opinion that there was a legal consideration for the promise which the intestate made, to pay for the debt of the son, coupled as it was with the direct promise to pay for the supplies that should thereafter be made at the request of the father, in faith of which promise further supplies were furnished by the plaintiff; that for the latter the plaintiff might well recover, if they were not included in the entire promise of the father, applicable both to the old and new supplies ; that the part of the promise which was for the debt of the son, was void, by force of the statute of frauds, it being by word of mouth and not in writing ; and being an entire contract, that the plaintiff cannot be permitted to separate it and recover for the part of the claim which arose after the promise.

But there is one item in the account of the plaintiff, viz. the cash paid for the taxes, which we think may be recovered by reason of the undertaking made by the intestate, which was not connected with the void promise. The next day after the latter was made, the intestate desired the son of the plaintiff, as the agent for the plaintiff, to pay the money taxes of his son, and promised that he would repay the same to the

Loom s
v.
Vewhall

plaintiff; and the son and agent of the plaintiff afterwards paid the same. Now at the time when the intestate made this promise, it was not connected with the undertaking which he had made on the day before. It may well stand by itself, as an original undertaking, and may be recovered on the general count.

The judgment should be for the plaintiff for that sum, viz. $1·60, and for one quarter of that sum as costs.

Afterwards a motion was made by the plaintiff for a new trial upon the single point, whether the supplies furnished by the plaintiff were gratuitous; for in such case there was no debt due from the intestate's son; and if so, then the father might as well make the refunding of the charity a part of the inducement to the plaintiff to permit the son to board with him, as any other matter, and so this case would not come within the statute of frauds, but under the cases in Cro. Eliz. &c., which were before the statute; and the Court granted a new trial accordingly.